UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT HOOVER,

    Plaintiff,

v.

Case No. 10-11127

Hon. Gerald E. Rosen

JEFFREY WEBER, MICHAEL OLCESE,
LAW FIRM OF WEBER AND OLCESE, PLC,
ROBERT REZNICK, and DUE PROCESS
OF MICHIGAN, INC.,

    Defendants.
_____/

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on _____September 30, 2011_____

PRESENT:  Honorable Gerald E. Rosen
                Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff Robert Hoover commenced this action in this Court on March 22, 2010, asserting federal civil rights claims under 42 U.S.C. § 1983 and several state-law claims against the law firm of Weber and Olcese, PLC, its principals Jeffrey Weber and Michael Olcese, state court officer Robert Reznick, and Mr. Reznick's corporation, Due Process of Michigan. By stipulated order entered on December 16, 2010, the Court dismissed Plaintiff's state-law claims with prejudice, leaving only his federal § 1983 claims for

resolution. Specifically, Plaintiff alleges that Defendants, acting under color of state law, conspired to violate his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, with these alleged violations occurring when the Defendant law firm retained Defendant Reznick to execute a state court order to seize Plaintiff's property and Reznick allegedly employed unlawful means in executing this order.

Through the present motion filed on October 22, 2010, Defendants Weber, Olcese, and their law firm seek an award of summary judgment in their favor on the remaining federal § 1983 claims asserted in count I of Plaintiff's complaint.[1] In support of this motion, these Defendants argue that the record fails to support any viable legal basis for charging them with liability for any constitutional violations Defendant Reznick may have committed while executing the state court order to seize property. Alternatively, the moving Defendants contend that Reznick did not actually violate any of Plaintiff's federal constitutional rights during his seizure of Plaintiff's property.

Plaintiff has filed a response to Defendants' summary judgment motion,[2] and Defendants, in turn, have filed a reply brief in further support of their motion, as well as a supplemental brief directing the Court's attention to a recent ruling in a case featuring

---

[1] The remaining two Defendants, Reznick and Due Process of Michigan, have not moved for summary judgment, and the claims against them will go forward regardless of the disposition of the present motion.

[2] Plaintiff initially sought leave to file a 40-page brief in opposition to Defendants' motion, but by order dated December 14, 2010, the Court denied this request and instead instructed Plaintiff to file a brief that was not to exceed 30 pages in length. In disregard of this order, Plaintiff filed a 35-page response brief.

similar claims and allegations. Having reviewed the parties' briefs in support of and opposition to Defendants' motion, as well as their accompanying exhibits and the remainder of the record, the Court finds that the pertinent facts, allegations, and legal arguments are fully presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Defendants' motion "on the briefs." *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II. FACTUAL BACKGROUND

Defendant Weber and Olcese, PLC ("W&O") is a law firm based in Troy, Michigan that specializes in debt collection services, including the prosecution of debt-collection suits. Defendants Jeffrey Weber and Michael Olcese are the firm's two principals. During the relevant time period, the W&O law firm regularly retained Defendant Robert Reznick and his company, Defendant Due Process of Michigan, Inc. ("DPM"), to execute state court orders authorizing the seizure of a judgment debtor's property to satisfy a judgment.[3]

In September of 2006, W&O — acting on behalf of its client, Beneficial MI Inc.

---

[3] Under Michigan law, a licensed court officer is authorized to execute such orders to seize property, and Defendant Reznick was an approved court officer for many Michigan circuit and district courts. In many Michigan courts, the W&O firm was free to choose its own court officer from the list of approved officers. In other state courts, however — so-called "closed courts" — the W&O firm was required to use the specific court officer appointed by that court. According to Plaintiff, W&O would sometimes bypass this restriction by filing *ex parte* motions obtaining the permission of these "closed courts" to use Defendant Reznick to execute an order to seize property.

— secured a $10,251.36 default judgment against Plaintiff Robert Hoover from a Michigan district court. (*See* Defendants' Motion, Ex. 4.) In February of 2007, W&O sought and obtained a state court order authorizing the seizure of Plaintiff's property in satisfaction of this judgment. (*See* Defendants' Motion, Ex. 5.) This order expressly identified Defendant Reznick as the court officer authorized to execute the order. (*See id.*)

On March 23, 2007, Defendant Reznick executed the state court order to seize property at Plaintiff's residence in Warren, Michigan. When Plaintiff opened the front door to his home, Reznick identified himself as a sheriff's deputy but, according to Plaintiff, he then pushed through the door without seeking Plaintiff's permission. Upon entering Plaintiff's residence, Reznick informed Plaintiff that he was there to collect a debt, and Plaintiff has testified that Reznick insisted upon an immediate payment of $2,500 before he would leave the home. Plaintiff further testified that Reznick threatened him with arrest and incarceration by the Warren police if he did not meet Reznick's money demand.

According to Plaintiff, when he informed Reznick that he could not come up with $2,500, Reznick lowered his demand to $1,000. After borrowing money from his roommate and calling a relative, Plaintiff was able to give Reznick the demanded $1,000 payment. Upon accepting the money, Reznick informed Plaintiff that a van parked outside the home was being towed away, and that Plaintiff would need to pay an additional $1,000 plus towing costs by the next day in order to get his van back. Before

Reznick left his residence, Plaintiff signed paperwork reflecting that he had paid $1,000 to Reznick, that his van had been seized and could be reclaimed with an additional $1,000 payment, and that the remainder of his debt would be repaid through biweekly payments of $250.[4] In all, Reznick was at Plaintiff's home for approximately one-and-a-half to two hours.

On March 22, 2010 — just one day before the three-year anniversary of Defendant Reznick's execution of the order to seize his property — Plaintiff commenced the present action in this Court. As noted earlier, only the first count of Plaintiff's complaint remains at issue. In this count, Plaintiff claims that Defendant Reznick's manner of executing the order to seize his property operated to violate his Fourth Amendment protections against unreasonable searches and seizures, as well as the Fourteenth Amendment protections against the deprivation of liberty or property without due process. Of more direct pertinence here, Plaintiff alleges that the W&O law firm and its principals, Defendants Weber and Olcese, conspired with Defendant Reznick to commit these constitutional violations.

### III. ANALYSIS

**A.     The Standards Governing Defendants' Motion**

Through the present motion, Defendants W&O, Weber, and Olcese seek summary

---

[4] Plaintiff was able to make the additional $1,000 payment to recover his van, but he did not make any of the $250 biweekly payments.

judgment in their favor on Plaintiff's federal claims brought under 42 U.S.C. § 1983.[5] Under the pertinent Federal Rule, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).[6] As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must — by affidavits or as otherwise provided in [Rule 56] — set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge,

---

[5]To be accurate, Defendants' motion also addresses the state-law claims asserted in Plaintiff's complaint, but these claims have since been dismissed through a stipulated order entered shortly after Defendants filed their motion.

[6]Effective December 1, 2010, Rule 56 has been revised in various respects, but the language quoted here (and below) reflects the Rule as it read when Defendants filed the present motion. None of the recent amendments to the Rule would materially affect the Court's disposition of Defendants' motion.

set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B.     Plaintiff Has Failed to Identify a Viable, Factually Supported Basis for Holding the Defendant Law Firm and Its Principals Liable under 42 U.S.C. § 1983 for Any Constitutional Violations Allegedly Committed During Defendant Reznick's Seizure of Plaintiff's Property.**

In count I of his complaint, Plaintiff has asserted claims against each of the Defendants under 42 U.S.C. § 1983. To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must establish that: (1) he was deprived of a right secured by the federal Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under color of state law. 42 U.S.C. § 1983; *see also Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57, 98 S. Ct. 1729 (1978); *Ziegler v. Aukerman*, 512 F.3d 777, 782 (6th Cir. 2008). Here, the parties evidently agree — and the Court likewise assumes, for present purposes — that Defendant Reznick acted under color of state law as he executed the order to seize Plaintiff's property. Thus, the primary issues before the Court are: (1) whether there is a basis in the law for holding Defendant W&O and its principals, Defendants Weber and Olcese, liable under § 1983 for the alleged violations of Plaintiff's constitutional rights as Defendant Reznick executed the state court order; and (2) whether there is a basis in the evidentiary record for concluding that the moving Defendants

entered into a conspiracy with Defendant Reznick to engage in these alleged violations. In addressing these issues, the Court considers in turn each potential theory through which Plaintiff is (or might be) seeking to hold the W&O firm and its principals liable under § 1983.

### 1.     Supervisory Liability

In surveying the potential theories of liability Plaintiff might be pursuing here, the Court has the benefit of several earlier rulings in other cases in this District featuring similar claims and allegations. First, in *Rodriguez v. Due Process of Michigan, Inc.,* No. 07-12578, 2008 WL 4449651 (E.D. Mich. Sept. 30, 2008), this Court addressed allegations that Defendant Reznick's corporation, Due Process of Michigan ("DPM"), and its employees or contractors had violated the plaintiffs' constitutional rights in executing a court order to seize the plaintiffs' property.[7] Although Reznick himself was not present during the execution of this order, the Court observed that he could be charged with supervisory liability under § 1983 if the plaintiffs could show that Reznick "encouraged the specific incident of misconduct" allegedly committed by a DPM employee "or in some other way directly participated in it." *Rodriguez,* 2008 WL 4449651, at *9 (internal quotation marks and citation omitted). The Court found that a

---

[7] The plaintiffs in *Rodriguez* were represented by the same attorney, James Shaw, who represents Plaintiff here, and Mr. Shaw also has served as plaintiff's counsel in each of the other similar cases referenced below. In addition, the W&O law firm was named as a defendant in *Rodriguez* and in each of the other, similar cases brought by Mr. Shaw in this District, but the plaintiffs in *Rodriguez* had settled their claims with W&O before this Court issued the ruling discussed in the body of this opinion.

factual dispute remained as to this issue, where the plaintiffs had submitted an affidavit stating that a DPM employee had called Reznick and sought his instructions while executing the order to seize the plaintiffs' property. 2008 WL 4449651, at *9.

The record here, in contrast, does not support this theory of supervisory liability. While there was evidence in *Rodriguez* that the supervisor to be charged with liability — in that case, Reznick — had given direction to his employees as to how to execute the order to seize property, there is no comparable evidence in this case that the W&O law firm or its principals interacted with Defendant Reznick in any way as he executed the order to seize Plaintiff's property. To be sure, in his response to Defendants' motion, Plaintiff cites the deposition testimony of W&O employees that they would occasionally communicate with Reznick or give him guidance as he executed orders to seize property on behalf of the firm and its clients. (*See* Plaintiff's Response Br. at 15.) Yet, nothing in the record suggests that any such communications occurred or guidance was given as Reznick executed the specific order at issue here.[8] Because the factual predicate that gave rise to potential supervisory liability in *Rodriguez* is absent here, no such theory of

---

[8]Indeed, it is striking that essentially *all* of the materials attached as exhibits to Plaintiff's response brief in this case evidently were compiled through the discovery efforts of Plaintiff's counsel in *other cases*, and not this one. (*See, e.g.,* Plaintiff's Response, Exs. B, C, D, N, O, Q (deposition transcripts and other materials gathered during discovery in *Rodriguez*).) The *only* exhibit that pertains specifically to this case is *Plaintiff's* deposition — a discovery effort that presumably was initiated by defense counsel, and not Plaintiff's counsel. This absence of case-specific discovery puts Plaintiff at a decided disadvantage as he attempts to establish that the W&O firm and its principals took actions *against him* that violated *his* constitutional rights and warrant the imposition of § 1983 liability *in this case.* Such liability does not attach in the abstract, but must be linked to specific actions taken by a particular defendant that operated to violate the rights of a particular plaintiff.

liability is available to Plaintiff in this case.

### 2. *Monell* Liability

The next potential avenue of recovery that Plaintiff arguably is pursuing here was also addressed in *Rodriguez*. In particular, assuming that Reznick was serving as an employee or independent contractor of the W&O firm as he executed the order to seize Plaintiff's property — and further assuming, of course, that the § 1983 requirement of state action is satisfied — this Court observed in *Rodriguez,* 2008 WL 4449651, at *9, that a private corporation such as W&O may be held liable for its employee's constitutional violation if this violation was the product of "an official [corporate] policy of some nature that was the 'direct cause' or 'moving force' behind the constitutional violation[]." As noted in *Rodriguez,* 2008 WL 4449651, at *9, this theory of liability rests on an extension of the Supreme Court's holding in *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S. Ct. 2018 (1978), to private corporations.

In an effort to establish such policy-based liability here, Plaintiff points to evidence indicating, in his view, that the W&O firm continued to use Defendant Reznick as its preferred court officer to execute orders to seize property, despite the firm's purported knowledge of complaints about the manner in which Reznick executed these orders. As evidence of complaints about Reznick's conduct and W&O's awareness of these complaints, Plaintiff relies principally on the testimony of a former W&O employee, Carol Anthony, given at a deposition in *Rodriguez,* (*see* Plaintiff's Response, Ex. N, Anthony 1/30/2008 Anthony Dep.), as well as an affidavit signed by Ms. Anthony

back in December of 2007, (*see* Plaintiff's Response, Ex. E, 12/11/2007 Anthony Aff.).[9]

In this testimony and affidavit, Ms. Anthony recounted — albeit only generally, and without such details as names or dates — instances in which debtors contacted the W&O firm to complain about Reznick's abusive conduct, foul language, and threats as he executed orders to seize property on behalf of the firm and its clients. (*See* Anthony Dep. at 128-31; Anthony Aff. at ¶¶ 9-16.) Ms. Anthony further stated that, notwithstanding these complaints, she was instructed to use Reznick whenever possible to execute orders to seize property. (*See* Anthony Dep. at 67; *see also* Plaintiff's Response, Ex. M (12/15/2005 e-mail from W&O employee Lori Herbert to Ms. Anthony, directing her to "make sure that you list Rob Reznick on every Execution that you send out of this office," and stating that she was "only allowed to use someone other than Rob on closed courts").)[10]

---

[9]This affidavit pre-dates the present litigation by over two years, and thus cannot have been obtained in connection with this case. Although the affidavit lacks a case caption, it presumably was secured by Plaintiff's counsel in the course of the *Rodriguez* litigation.

[10]Several of Plaintiff's other examples of complaints about Defendant Reznick's conduct and the W&O firm's awareness of these complaints are entitled to little or no evidentiary weight. First, Plaintiff points to allegations of Reznick's misconduct made in a December 2001 federal court complaint. (*See* Plaintiff's Response, Ex. F.) Such allegations, of course, do not establish that Reznick actually engaged in any such misconduct, and any such alleged actions would have occurred nearly six years before Reznick engaged in the activities giving rise to the present suit. Next, regarding the affidavit of Akib Abiola, (*see* Plaintiff's Response, Ex. H), this affidavit references the activities of Reznick (and others) in January of 2006, but the only purported connection to the W&O firm is Mr. Abiola's assertion that a document carried by Reznick and his fellow court officers at the time "had the name of attorney Jeffrey Weber on it," (*id.*, Abiola Aff. at ¶ 2).

Plaintiff next cites a December 2007 letter in which an individual named Damon Novak complains about the actions of three court officers and threatens to file a grievance against the

This effort by Plaintiff to identify a W&O policy as the "moving force" behind the alleged violations of his constitutional rights suffers from a number of defects. First, as two other courts in this District have recently held in similar cases brought by Plaintiff's counsel against Reznick, the W&O firm, and its two principals, a private law firm such as W&O is not transformed into a "state actor" for purposes of *Monell*-based liability merely by virtue of its use of a court officer to collect on a judgment obtained by the firm on behalf of a private client. *See Moore v. Weber,* No. 10-13037, 2011 WL 3607037, at *3-*4 (E.D. Mich. Aug. 16, 2011) (Cohn, D.J.); *Rozewski v. Weber,* No. 10-13035, 2011 WL 3329777, at *4 (E.D. Mich. Aug. 3, 2011) (Hood, D.J.). As explained in *Rozewski*:

> The Weber and Olcese Defendants were acting as counsel on behalf of a certain client when a Default Judgment and the Order to Seize Property were obtained [from] the state court. There are no allegations by [plaintiff] Rozewski that the action by the Weber and Olcese Defendants in obtaining such a judgment and order constitute a "state action." Rozewski claims that

---

attorney who hired these court officers. Yet, only one of the court officers (Tom Royal) is identified by name, and neither Reznick nor any W&O attorney is mentioned in this letter. (*See* Plaintiff's Response, Ex. I.) Likewise, while Plaintiff has produced a copy of a motion filed in a state court suit complaining of harassing conduct by unnamed "Court officers" in August of 2006, (*see* Plaintiff's Response, Ex. K), this motion does not identify the court officers by name or mention Defendant Reznick. Finally, the affidavit of Amanda Krantz does not rest upon her personal knowledge of Reznick's alleged misconduct in seizing a debtor's property, but instead relays the debtor's hearsay complaints about his conduct. (*See* Plaintiff's Response, Ex. J.)

Plaintiff's brief in response to Defendants' motion does not acknowledge any of these deficiencies in the exhibits accompanying this brief, but instead takes the position that these materials establish both Defendant Reznick's past misconduct and the W&O firm's notice of complaints against Reznick arising from this alleged misconduct. (*See* Plaintiff's Response Br. at 6-10.) Plaintiff's counsel is cautioned that in his future submissions to the Court, he should take greater care to ensure that any exhibits comport with the applicable rules, *see, e.g.,* Fed. R. Civ. P. 56(e)(1) (now Fed. R. Civ. P. 56(c)(4)) (requiring that affidavits "must be made on personal knowledge [and] set out facts that would be admissible in evidence"), and that all factual assertions are supported by a fair and permissible reading of the accompanying record.

> the action of *obtaining Reznick's services to enforce* the Order to Seize Property constitutes a state action.  However, Rozewski has not submitted any legal authority that a law firm's action to obtain services to enforce an Order to Seize Property constitutes a "state action."  Michigan law allows a party to take steps to satisfy a judgment.  No state or municipal[] decision is involved in obtaining such services, other than the applicable statute.  There is no evidence that apart from the statutory fees for the services charged by Reznick, the Weber and Olcese Defendants have any other employment or contractual relationship with Reznick . . . .  [Thus,] no state action existed when the Weber and Olcese Defendants obtained the services of Reznick to satisfy the judgment.  A § 1983 action cannot lie against a municipality or, in this case, the law firm or its principals, under [a *Monell*-based theory] since the Weber and Olcese Defendants were not executing a policy or custom adopted by a state or municipality.  The Weber and Olcese Defendants' actions of obtaining Reznick's services cannot be connected to any state or municipal policy or custom.

*Rozewski,* 2011 WL 3329777, at *4 (citation omitted) (emphasis in original).  Likewise, in this case, Plaintiff has not identified any authority for the proposition that the W&O firm acted under color of state law or satisfied any of the tests for state action by retaining court officer Reznick to execute an order to seize property that the firm had obtained on behalf of a private client.

Even if Plaintiff could satisfy this requirement of state action, the record fails to establish any nexus between an alleged violation of Plaintiff's constitutional rights and a policy adopted by the W&O firm, such that this policy could be said to be the "moving force" behind any such violation.  First, as a purely evidentiary matter, the record would not permit a trier of fact to conclude that W&O had any policy in place during the relevant time period that could have directed or governed Defendant Reznick's conduct as he executed the order to seize Plaintiff's property.  As noted earlier, Plaintiff's proof of a

law firm policy rests almost exclusively on the deposition testimony and affidavit of a former W&O employee, Carol Anthony. Yet, Ms. Anthony states in her affidavit that her employment with the W&O firm "ended in December 2006," (Plaintiff's Response, Ex. E, Anthony Aff. at ¶ 5), several months before the alleged violations of Plaintiff's constitutional rights. Even assuming, then, that Ms. Anthony's deposition testimony and affidavit could be read as establishing the policy posited by Plaintiff — *i.e.,* a policy of using Defendant Reznick as the preferred court officer for executing orders to seize property obtained by the W&O firm on behalf of its clients, despite the firm's knowledge of Reznick's purported practice of executing these orders through inappropriate or unlawful means — it would be a matter of pure conjecture to conclude that the firm *continued* to employ this policy, several months *after* Ms. Anthony left the firm, as the basis for its decision to use Defendant Reznick to execute the order to seize Plaintiff's property.[11] And, of course, Plaintiff's lack of particularized discovery efforts in this litigation has left him unable to produce any direct evidence that Defendant Reznick's

---

[11]To be sure, apart from the testimony and affidavit of Ms. Anthony, Plaintiff also points to the deposition testimony of another W&O employee, Karla Smith, who evidently worked for the firm during the time period of relevance here. And, in fact, Ms. Smith's testimony may arguably be viewed as evidencing a continued W&O policy to use Defendant Reznick whenever possible to execute orders to seize property — although she described this preference for Reznick as arising *both* from the direction given to her by her superiors, Defendants Weber and Olcese, *and* from the exercise of her own discretion, based on her assessment that she and Reznick "work[ed] very well together." (Plaintiff's Response, Ex. O, K. Smith Dep. at 51-56.) Yet, Ms. Smith's testimony utterly fails to support the *other* aspect of the W&O policy posited by Plaintiff — namely, that the W&O firm continued to use Defendant Reznick despite its awareness that he employed unlawful means in executing orders to seize property. The portion of Ms. Smith's deposition testimony produced by Plaintiff is utterly silent on this issue.

actions in this specific case were, in fact, the product of any W&O policy.

In any event, the W&O policy posited by Plaintiff is far too vague and generalized to be viewed as the moving force behind a violation of Plaintiff's ***constitutional rights,*** as required to establish liability under § 1983. As catalogued in Plaintiff's response brief, the complaints about Defendant Reznick's conduct concerned his alleged use of threats, intimidation, and foul or offensive language. The principal constitutional violation alleged by Plaintiff, in contrast, is Defendant Reznick's unlawful entry into his home without his consent, in violation of the Fourth Amendment. Thus, even assuming that Defendant Reznick's past practice in executing orders to seize property involved conduct proscribed under some body of law, and even assuming that this conduct was attributable to a policy of the W&O firm, any such policy could not be deemed the "moving force" behind the specific form of illegality claimed here — namely, Defendant Reznick's alleged violation of Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.[12] Plaintiff's evidence establishes, at best, that W&O looked the

---

[12]The Court recognizes that, in addition to this Fourth Amendment claim, Plaintiff also has asserted a Fourteenth Amendment claim under a "substantive due process" theory. (*See* Plaintiff's Response Br. at 31-34.) Yet, substantive due process claims ordinarily are evaluated under a "shocks the conscience" standard, and this Court previously has noted the "clear Sixth Circuit precedent declining to extend the 'shocks the conscience' standard beyond cases involving physical abuse." *Kawecki v. County of Macomb,* No. 04-70907, 2008 WL 205241, at *25 (E.D. Mich. Jan. 24, 2008). There is no allegation of physical force here. Moreover, to the extent that Plaintiff appeals more generally to Defendant Reznick's allegedly "arbitrary," "irrational," or "fundamentally unfair" conduct as a basis for a substantive due process claim, Plaintiff's examples of alleged illegalities in the course of Reznick's entry into his residence and seizure of his property directly implicate the specific Fourth Amendment protections against unreasonable searches and seizures. The Supreme Court has instructed that federal constitutional claims that implicate a specific constitutional provision must be analyzed under

other way or condoned Defendant Reznick's inappropriate (and perhaps unlawful) tactics, but this record cannot forge the further (and necessary) link between a W&O policy and the particular sort of illegality that could support a claim under § 1983 — namely, conduct in violation of a federal constitutional right.[13] For all of these reasons, then, Plaintiff has failed to establish a basis for the imposition of *Monell* liability.

### 3. Liability as a Co-Conspirator

The final theory of liability that is potentially available to Plaintiff here is the liability imposed under § 1983 against those who conspire among themselves to violate a plaintiff's federal constitutional rights. *See Memphis, Tennessee Area Local, American Postal Workers Union v. City of Memphis,* 361 F.3d 898, 905 (6th Cir. 2004); *Hooks v. Hooks,* 771 F.2d 935, 943-44 (6th Cir. 1985).[14] Upon addressing this theory of co-

---

the legal standards that govern this particular provision — here, the Fourth Amendment — rather than the more generalized standards of "substantive due process." *See Graham v. Connor,* 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1870-71 (1989); *see also Kawecki,* 2008 WL 205241, at *23 n.28. Accordingly, Plaintiff cannot pursue a "substantive due process" theory here.

[13]Indeed, some of the W&O "policies" identified by Plaintiff lie even farther afield from the § 1983 claims asserted in this case. Plaintiff contends, for instance, that the W&O firm took steps to use Defendant Reznick to execute orders to seize property, even when those orders issued from "closed courts" that did not include Reznick on their lists of approved court officers. Since there is no claim here that the court that issued the order to seize Plaintiff's property was such a "closed court," or that W&O employed questionable means to secure the court's approval to use Reznick to execute this order, the Court fails to see the relevance of Plaintiff's argument on this point.

[14]Although, as discussed earlier, a *Monell*-based § 1983 claim entails a showing that the defendant — here, the W&O firm — acted under color of state law in establishing the policy that allegedly was the "moving force" behind the plaintiff's constitutional injuries, no such showing of state action is necessary to support a conspiracy-based theory of § 1983 liability. Rather, the Sixth Circuit has found that "[p]rivate persons may be held liable under § 1983 if they willfully participate in joint action with state agents." *City of Memphis,* 361 F.3d at 905; *see also Hooks,*

conspirator liability under facts indistinguishable from those presented here, two other courts in this District have held that these facts do not establish a basis for a conspiracy claim under § 1983.  *See Moore, supra,* 2011 WL 3607037, at *4; *Bairactaris v. Weber,* No. 10-10983, 2010 WL 4623875, at *2 (E.D. Mich. Nov. 4, 2010) (O'Meara, D.J.).  This Court concurs in the analysis of these prior decisions, and reaches the same result here.

To establish a claim of conspiracy under § 1983, Plaintiff must produce evidence from which a trier of fact could find "an agreement between two or more persons to injure another by unlawful action."  *Hooks,* 771 F.2d at 943-44.  The Sixth Circuit has explained that "[e]xpress agreement among all the conspirators is not necessary" to establish the existence of a conspiracy, and that "[e]ach conspirator need not have known all of the details of the illegal plan or all of the participants involved."  *Hooks,* 771 F.2d at 944.  Rather, "[a]ll that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant."  771 F.2d at 944.

In both *Moore* and *Bairactaris,* the courts found no evidence of the requisite "single plan" shared by Defendant Reznick and the W&O firm to violate the plaintiff debtor's constitutional rights.  As explained in *Bairactaris:*

> In this case, Plaintiff has failed to show any collusion or communication between W & O and Reznick to violate Plaintiff's rights.

---

771 F.2d at 943.

17

> Instead, Plaintiff's brief is rife with hyperbole, claiming that the law firm is aware that Reznick uses "terroristic methods" during the executions [of orders to seize property]. Plaintiff claims that W & O had knowledge of past complaints against Reznick and his company by judgment debtors. However, even if that were true, it is insufficient to support a claim for conspiracy. Knowledge alone of tortious conduct is insufficient to prove a conspiracy agreement. Knowledge of the planned tort must be combined with intent to aid in its commission. An entity that engages in legitimate business with a party that is acting tortiously cannot be deemed a co-conspirator absent clear evidence of an agreement to join in the tortious conduct.

*Bairactaris,* 2010 WL 4623875, at *2 (internal quotation marks and citation omitted); *see also Moore,* 2011 WL 3607037, at *4 ("[K]nowledge alone is not sufficient to show a conspiracy under § 1983.").

Precisely the same can be said here. As discussed earlier, the materials produced by Plaintiff in this case are riddled with evidentiary defects: many of Plaintiff's exhibits reference irrelevant, far-removed time periods or lack any specific mention of the parties to this litigation, and other materials include assertions that would not be admissible in evidence at trial or otherwise run afoul of the rules governing the Court's consideration of exhibits in deciding a summary judgment motion. Nonetheless, the most that could possibly be gleaned from this record is that various judgment debtors had complained in the past of Defendant Reznick's conduct in executing orders to seize property, and that the W&O firm was aware of these complaints but nonetheless continued to use Reznick's services. As observed in both *Bairactaris,* 2010 WL 4623875, at *2, and *Moore,* 2011 WL 3607037, at *4, such knowledge alone is not sufficient to establish that the W&O firm entered into a single, shared plan with Defendant Reznick to violate Plaintiff's

constitutional rights.[15]

Rather, the only agreement established under the record is a shared understanding between Reznick and the W&O firm that the latter would use the former as the court-appointed officer charged with executing the order to seize Plaintiff's property. Nothing in this record establishes the further proposition that the W&O firm intended, through this arrangement, to achieve the unlawful conspiratorial objective of violating Plaintiff's constitutional rights. Even assuming — beyond all the evidence in the record, or any reasonable inferences arising therefrom — that Reznick had violated the constitutional rights of debtors in the past, and that the W&O firm was aware of these violations, this by itself would not permit the conclusion that the firm intended, through its engagement of Reznick in this case, to accomplish the constitutional violations allegedly committed by Reznick as he seized Plaintiff's property. Yet, Plaintiff offers nothing that would bridge this essential evidentiary gap between the firm's decision to use Reznick and Reznick's ensuing conduct. Accordingly, just as in *Moore* and *Bairactaris,* this Court finds that Plaintiff has failed to identify a genuine issue of material fact as to his § 1983 conspiracy claim, and that Defendants W&O, Weber, and Olcese are entitled to summary judgment in their favor on this and Plaintiff's other § 1983 claims.

---

[15]In addition, and as addressed earlier, the "knowledge" cited by Plaintiff is far too vague and general to establish the W&O firm's awareness that Reznick routinely (or even occasionally) violated the federal constitutional rights of debtors as he executed orders to seize their property. Plaintiff and his counsel studiously avoid the question whether the use of foul language, verbal threats, and intimidating actions establishes a practice of violating federal constitutional rights, as opposed to mere boorishness or, perhaps, conduct in violation of state or local law.

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that the October 22, 2010 motion for summary judgment brought by Defendants Weber, Olcese, and the Law Firm of Weber and Olcese, PLC (docket #13) is GRANTED.


                                        s/Gerald E. Rosen
                                        Chief Judge, United States District Court

Dated: September 30, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 4, 2011, by electronic and/or ordinary mail.

                                        s/Ruth A. Gunther
                                        Case Manager